```
 1  SEYFARTH SHAW LLP
    Christian J. Rowley (SBN 187293) crowley@seyfarth.com
 2  Althea V. Bovell (SBN 200240) abovell@seyfarth.com
    560 Mission Street, Suite 3100
 3  San Francisco, California 94105
    Telephone: (415) 397-2823
 4  Facsimile: (415) 397-8549

 5  Attorneys for Defendant
    NEW UNITED MOTOR MANUFACTURING, INC.
 6

 7  LAW OFFICES OF H. NELSON MEEKS
    H. Nelson Meeks
 8  870 Market Street, Suite 975
    San Francisco, CA 94012
 9  Telephone:  (415) 898-9915
    Facsimile:  (415) 989-9914
10
    Attorneys for Plaintiff
11  DAVID CANNON
```

UNITED STATES DISTRICT COURT

IN AND FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID CANNON, | Case No. C 07 05400 VRW |
| Plaintiff, | **JOINT CASE MANAGEMENT CONFERENCE STATEMENT** |
| v. | Date:  February 14, 2008 |
| NEW UNITED MOTOR MANUFACTURING, INC., GENERAL MOTORS, TOYOTA MANUFACTURING, AND DOES 1-50 | Time:  3:30 p.m.<br>Judge: Hon. Vaughn R. Walker<br>Ctrm:  6, 17th Floor |
| Defendants. | |

Plaintiff David Cannon and Defendant New United Motor Manufacturing, Inc. ("NUMMI" or "Defendant"), by and through their respective counsel, hereby submit the following Joint Case Management Conference Statement.

**1.   JURISDICTION**

This Court has subject matter jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1331, and Section 301 of the Labor Management Relations Act (29 U.S.C. § 185), in that Plaintiff's claims pertain directly to the rights and obligations arising from the collective bargaining agreement ("CBA") that governed his employment with Defendant. The Court has supplemental

jurisdiction of Plaintiff's state law claims pursuant to 28 U.S.C. § 1376. All parties are subject to the Court's jurisdiction.

2. **FACTS**

　　A.　**Plaintiff's Statement of Facts:**

On or around January 17, 2000, Plaintiff suffered a disabling injury to his back.

Plaintiff is a disabled person thereby falling with the scope of persons protected by the FEHA.

Plaintiff has a back injury consisting of a small disc protrusion in the midline and to the left of the midline causing mild to moderate impingement on the thecal sac. He suffers from displacement of the S1 nerve root on the left at L5-S1.

According to a decision made by the Social Security Administration on February 19, 2005, Plaintiff was "disabled" within the meaning of the Social Security Act beginning May 3, 2000 and continuing through the date if its decision.

According to said decision, Plaintiff was limited to a work function wherein he had the capacity to lift and carry 10 pounds frequently and 20 pounds occasionally, and to sit, stand, and walk for 6 hours in an 8-hour workday. Said limitations indicated Plaintiff had the ability to perform "light" work as defined by the regulations of the Social Security Act. The Social Security Administration also found that the Plaintiff was precluded from performing any repetitive bending, stooping, pushing, or pulling, and he must alternate sitting and standing at will. The Social Security Administration also found that Plaintiff was precluded from performing his past relevant work.

Plaintiff is informed and believes and alleges thereon that for many years defendants had a practice of refraining from terminating disabled employees any sooner than after that employee's length of seniority passed following the date of the disability. As applied to plaintiff, he alleges that he became disabled in or around 2000. Plaintiff alleges that his seniority was over 14 years as of the date of his disability. He therefore alleges that defendants led him to believe it would not and could not terminate his employment any sooner than sometime in or around 2014.

1  Plaintiff is informed and believes and alleges thereon that for many years defendants had a practice of paying employees who became disabled after the age of 50 who had more than 10 years of service full benefits until the age of 65. Plaintiff was aware of this practice and believed it applied to him. Plaintiff alleges that his disability commenced after he was 50 years old. Plaintiff alleges that he had more than 10 years of service at the time of his disability.

Plaintiff is informed and believes and alleges thereon that for many years defendants' practice towards ex-employees was to provide one month of medical insurance after the date of separation. In Plaintiff's case, Defendants' terminated his insurance the day after terminating him.

Plaintiff is informed and believes and alleges thereon that Defendants did not credit him 208 hours of vacation and personal absence allowance time he was entitled to on the date it terminated him. On one day it was there and the next day it disappeared. Exhibit A.

Plaintiff informed defendants of his disability and asked that it do for him what it had done for others that preceded him. Defendants' refused.

Defendants were aware of plaintiff's condition as described above.

On December 16, 2005, and within one year of the date of the discrimination committed by defendant, plaintiff filed a charge of discrimination with the California Department of Fair Employment and Housing (DFEH). A copy of this charge is appended hereto, marked "Exhibit B," and is incorporated by this reference as though fully set forth.

On August 23, 2006, the DFEH issued to plaintiff a notice of right to bring a civil action based on the charge that is "Exhibit C" to this complaint. A copy of this notice of right of action is appended hereto, marked "Exhibit C," and is incorporated by this reference as though fully set forth.

**B.  Defendant's Statement of Facts:**

Defendant disputes Plaintiff's claims, and asserts the following: Plaintiff was justly terminated pursuant to the CBA between Defendant and Plaintiff's union, the United Auto Workers, Local 2244 (the "Union").

1    Defendant hired Plaintiff on October 28, 1986 as a team member in production (line
2 work). On May 3, 2000, Plaintiff began a leave of absence for medical reasons. On November
3 7, 2000, Plaintiff's treating physicians deemed him permanent and stationary. Plaintiff did not
4 return to work between the time he began his leave of absence and the date of his termination on
5 November 30, 2005. During the time Plaintiff was on leave, Defendant accommodated Plaintiff
6 by maintaining his leave of absence with benefits while he was either unable to work or had
7 significantly limiting restrictions that prevented Plaintiff from working in any open, available job
8 that was consistent with his seniority, pursuant to the CBA.
9    Prior to Plaintiff's termination, and pursuant to several arbitration decisions (including a
10 December 17, 1990, decision by Arbitrator Staudohar, and those affirming Staudohar's
11 interpretation of the CBA, specifically, Article XXIII, Section 9), Defendant concluded that it
12 had the right, under the CBA, to terminate an employee whose injury or illness reached
13 permanent and stationary status, particularly where these permanent medical restrictions
14 precluded the employee from returning to work, and provided certain notice and accommodation
15 requirements were met. As early as mid-2004, Defendant informed the Union of its intent to
16 comply with this interpretation of the CBA, and at the Union's request, sent a letter dated
17 September 16, 2005 to the Union with the names, addresses and ages of all the team members
18 who would thereby be affected.
19    On September 26, 2005, Defendant informed Plaintiff that his leave of absence was due
20 to end on November 11, 2005. In October 2005, representatives from the Union and Defendant's
21 Disability Management Section met with Plaintiff to review his status, and provide him an
22 opportunity to present Defendant with any information that would assist in finding any available,
23 permanent job. Defendant also informed Plaintiff that for a 30-day period following the
24 meeting, Defendant would continue to look for an open and available, permanent position that
25 would be consistent with Plaintiff's medical restrictions and seniority. If no such positions
26 became available at the end of the 30-day period, Plaintiff's employment would be terminated.
27    On November 30, 2005, when no such permanent positions consistent with Plaintiff's
28 medical restrictions and seniority became available, Plaintiff's seniority was broken and his

4

employment was terminated in accordance with the CBA.

3. **LEGAL ISSUES**

    A.    **Plaintiff's Statement of Legal Issues:**

Plaintiff has made a number of allegations on which he will need discovery to develop sufficient proof. Plaintiff contends that the following legal issues will be resolved in the affirmative:

    1.    Did defendants represent that it would provide benefits to a class of employees having 10 years of services who were over 50 years old and who became disabled and then fail to provide the benefits promised?

    2.    Did defendants commit unlawful discriminatory actions against plaintiff on account of his disability in violation of Government Code Section 12940(a)?

    3.    Did defendants act with malice as defined by Civil Code Section 3294?

    4.    Did defendants make fraudulent and/or misleading statements as defined by the Unfair Business Practices Act?

    5.    Did defendants unlawfully eliminate plaintiff's vacation time?

    B.    **Defendant's Statement of Legal Issues:**

Defendant's investigation of Plaintiff's claims is still ongoing, and it obviously does not have the benefit of discovery at this time. With that in mind, the following broad, general factual issues appear relevant at this time:

    1.    Whether Plaintiff's termination was lawful and within the provisions of the applicable collective bargaining agreement;

    2.    Whether Defendant provided Plaintiff with reasonable accommodations for his alleged disability;

    3.    Whether Defendant acted with malice, fraud and oppression in terminating Plaintiff;

    4.    Whether Defendant made fraudulent or misleading representations to Plaintiff regarding employment benefits?

    5.    Whether Plaintiff relied on the alleged fraudulent or misleading

5

representations;

6. Whether Defendant failed to pay Plaintiff all money owed to Plaintiff upon his termination;

7. Whether Plaintiff is entitled to injunctive relief and reinstatement.

**4. NARROWING OF ISSUES**

At this time, it is unknown to the parties whether issues can be narrowed.

**5. MOTIONS**

The parties have filed no prior or pending motions. Plaintiff is contemplating whether a motion to remand is appropriate. Defendant anticipates that it may file a dispositive motion if the facts and law warrant it.

**6. EVIDENCE PRESERVATION**

Defendant has taken steps to preserve evidence relevant to the issues reasonably evident in this action, including preservation of any electronically recorded material.

**7. DISCLOSURES**

The parties intend to exchange their Initial Disclosures prior to the Case Management Conference, as required.

**8. DISCOVERY**

A. **Non-expert discovery**

1. Plaintiff's Discovery

Plaintiff will need to propound written discovery and take subsequent depositions to provide evidence supporting his claim which can be distilled to proving defendants' made certain intentional untrue presentations. Discovery will be needed to verify plaintiff's labor claim. Without prior written discovery, plaintiff cannot ascertain the number of depositions he will need to take.

2. Defendant's Discovery

Defendant will take Plaintiff's deposition. Defendant believes that it will need two seven-hour days of actual deposition time to complete Plaintiff's deposition. In exchange, Defendant is willing to produce one of its witnesses for a two-day deposition. Prior to Plaintiff's

deposition, Defendant will serve a request for production of documents and special interrogatories, relating to Plaintiff's medical history and records. Defendant may conduct additional written discovery, and will conduct additional depositions as necessary. If the circumstances warrant, Defendant anticipates that it will conduct one or more independent medical examinations to evaluate any emotional distress and physical injuries or disabilities claimed by Plaintiff.

Other than as described above, Defendant does not propose any limitation on, or change in, the number of discovery requests or the duration of discovery, other than what the federal and local rules already provide. Defendant does not propose any limitation on the subject matter of discovery, other than what the federal and local rules already provide.

### B. Expert Discovery

Defendant may designate an expert as necessary, and may determine to depose Plaintiff's experts, if any. Defendant requests that the Court consider setting deadlines for experts relating to damage issues after the time at which dispositive motions would be decided, so that the parties can avoid the expense of damage experts if the case is disposed of via motion practice.

### C. Deadlines for completion of discovery

The parties propose the following discovery deadlines:

| | |
|---|---|
| Written discovery completed by: | January 31, 2009 |
| Parties to designate experts and exchange reports by: | January 31, 2009 |
| Depositions completed by: | March 31, 2009 |
| Expert depositions (liability) completed by: | May 29, 2009 |
| Expert depositions (damages) completed by: | October 31, 2009 |

Plaintiff concurs with the above schedule.

## 9. CLASS ACTION

Not applicable.

## 10. RELATED CASES

Plaintiff believes a recent supplemental arbitration decision may be relevant to the issues in this matter.

7

1  **11.   RELIEF (Plaintiff's unilateral statement).**

2      According to Plaintiff's Statement of Damages filed with his complaint, Plaintiff seeks
3  the following in damages:

4      General Damages:

5          Pain, suffering and inconvenience    $25,000

6          Emotional distress    $25,000

7      Special Damages:

8          Future medical expenses    $40,000

9          Loss of earnings    $40,000

10          Loss of future earning capacity    $40,000

11      Punitive Damages:    $50,000

12      Defendant anticipates challenging Plaintiff's alleged damages on several grounds,
13  including failure to mitigate and Plaintiff's own conduct resulting in his alleged damages.

14  **12.   ADR**

15      The parties are willing to participate in private mediation.

16  **13.   SETTLEMENT**

17      The parties have not yet attempted to settle this matter.

18  **14.   CONSENT TO MAGISTRATE FOR ALL PURPOSES**

19      Defendant does not consent to a magistrate judge.

20  **15.   EXPEDITED SCHEDULING**

21      Defendant does not consent to an expedited schedule at this time.

22  **16.   SCHEDULING**

23      Defendant proposes the Court hold a status conference on February 28, 2008.

24      The parties propose a dispositive motion hearing cutoff of July 31, 2009, and a trial date
25  of December 30, 2009.

26  **17.   TRIAL**

27      Plaintiff did not timely request a jury trial.

28

18. **DISCLOSURE OF INTERESTED ENTITIES OR PERSONS**

Pursuant to Civil Local Rule 3-16, as part of its removal papers, Defendant identified the following interested entities: General Motors and Toyota Manufacturing.

19. **MATTERS THAT MAY FACILITATE THE DISPOSITION OF THIS MATTER**

None known at this time.

DATED: February 4, 2008

SEYFARTH SHAW LLP

By _____
Christian J. Rowley
Althea V. Bovell
Attorneys for Defendant
NEW UNITED MOTOR MANUFACTURING, INC.

DATED: February 7, 2008

LAW OFFICES OF H. NELSON MEEKS

By _____
H. Nelson Meeks

Attorneys for Plaintiff
DAVID CANNON

SF1 28312486.1